Argued and submitted June 17, 1987, reversed and remanded February 10, Tuttle's reconsideration denied March 25, Black's reconsideration denied April 8, Tuttle's petition for review denied April 18 and Black's petition for review denied April 25, 1988 (305 Or 577)

STATE OF OREGON,
*Appellant,*

*v.*

SHERYL SUZANNE BLACK,
*Respondent.*

(C 85-07-33033, C 85-07-33034, C 85-07-33040, C 85-07-33044;
CA A39815 (Control), A39816, A39819, A39820)

STATE OF OREGON,
*Appellant,*

*v.*

DEBRA ROCHELLE TUTTLE,
*Respondent.*

(C 85-07-33035, C 85-07-33038, C 85-03-31005, C 85-07-33042;
CA A39817, A39818, A39821, A39822)
(Cases consolidated)

749 P2d 1185

Terry Ann Leggert, Assistant Attorney General, Salem, argued the cause for appellant. With her on the briefs were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Wayne Mackeson, Portland, argued the cause for respondent Sheryl Suzanne Black. With him on the brief was Des Connall and Dan Lorenz, P.C., Portland.

Diane L. Alessi, Deputy Public Defender, Salem, argued the cause for respondent Debra Rochelle Tuttle. With her on the brief was Gary D. Babcock, Public Defender, Salem.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

RICHARDSON, P. J.

## RICHARDSON, P. J.

The state appeals the dismissal of several felony theft and conspiracy indictments on former jeopardy grounds. ORS 131.515(2). The state argues that the indictments were not barred by the defendants' prior convictions for theft and conspiracy, because the contested indictments arose out of a series of independent criminal transactions. We reverse.

Defendants participated in an ongoing scheme at a Gresham restaurant to steal liquor sale proceeds from their employer. The scheme involved several other employes and involved alteration of cash register receipts for alcoholic drinks by recording less than the customer was charged. The full amount would be collected from customers, and the difference would be split among the participating employes. The thefts began in 1983 and continued until the plan was discovered by the employer in December, 1984. Pursuant to an agreement between the participants, the thefts occurred only when business was good and the amount stolen was limited to $100 per employe, each time.

On March 13, 1985, each defendant was charged in a six-count indictment with three counts of first degree theft and three counts of criminal conspiracy on the basis of incidents occurring on November 14, 23 and 30, 1984. Defendant Black moved for severance of the charges, and that motion was granted. Defendant Tuttle's subsequent motion for a trial separate from Black was denied, but her alternative motion, which also sought severance of the charges, was granted. Defendants' joint trial on Counts III and IV of the indictment was set for July 29, 1985. The state subsequently filed four new indictments against defendant Black and three against defendant Tuttle. Three of the new charges against each defendant were based on thefts that had allegedly occurred on April 27 and 28 and September 14, 1984. The fourth charge against defendant Black was based on a theft that had allegedly occurred on September 7, 1984.

On August 5, defendants were each convicted on the two counts from the original indictments in a trial to the court. Three days later they were arraigned on the second group of indictments. Both defendants filed motions for dismissal, alleging improper joinder and former jeopardy. On the

basis of its determination that all of the charges were grounded on a single "criminal episode" under ORS 131.505(2) and (4), the court dismissed both the additional theft charges and the remaining counts of the original indictment.[1]

■      The statutory prohibition against multiple prosecution of separate offenses is contained in ORS 131.515(2):

> "No person shall be separately prosecuted for two or more offenses based upon the same criminal episode, if the several offenses are reasonably known to the appropriate prosecutor at the time of commencement of the first prosecution and establish proper venue in a single court."

The state acknowledges that the prosecutor was aware of all the potential charges against defendants at the time the initial indictments were filed. It also agrees that there was proper venue for all of the offenses in a single court. The key issues are whether defendant Tuttle waived her right to consolidation of the charges contained in the initial indictment and whether the additional charges against both defendants were correctly characterized as based on a single criminal episode.

We turn first to the waiver issue. In *State v. Boyd,* 271 Or 558, 533 P2d 795 (1975), the court established the pretrial procedure for potential joinder situations:

> "Hereafter, whenever the prosecutor becomes aware of multiple charges facing a single defendant, he must make an initial determination of whether the charges are unitary, that is whether they grew out of a single act or transaction. Unless the prosecutor is absolutely certain that presenting the facts underlying each charge will not necessitate reference to the facts underlying another, the prosecutor should move for joinder of the charges for trial. The defendant may oppose, acquiesce in, or join in this motion or, if the charges were initially brought together, move for severance. The defendant will thus be forced to make a choice as to joinder or severance which, in the vast majority of cases, should be accepted. Any objections the defendant might make to the prosecutor's choice would thereafter be waived." 270 Or at 568-69.

Defendant Tuttle argues that her election under the *Boyd*

---

[1] The state does not appeal from the dismissal of the charges in the first indictment against Black.

procedure to sever two of the charges for trial from the initial set of indictments should not be construed as a waiver of her right to object to the additional four charges on double jeopardy grounds. She contends she was deprived of any meaningful choice between consolidation and severance by her co-defendant's pretrial tactics. She notes that, at the time of her election, defendant Black had already moved for severance and she was faced with the choice of either being tried on six charges in the same proceeding where her co-defendant was to be tried on two charges or to move for severance. Defendant Black's tactics may have inconvenienced defendant Tuttle, but the fact remains that she made a choice between severance and joinder. The factors that defendant Tuttle considered in making that decision are of little consequence in an objective evaluation of whether there was, in fact, a waiver. We hold that the prosecutor properly followed the *Boyd* procedures with respect to the first set of charges and defendant Tuttle's objections on former jeopardy grounds were waived.

The trial court dismissed the second group of charges against both defendants on the basis that they were part of the same criminal episode and must be joined with the first group for trial. "Criminal episode" is defined as

"continuous and uninterrupted conduct that establishes at least one offense and is so joined in time, place and circumstances that such conduct is directed to the accomplishment of a single criminal objective." ORS 131.505(4).

In *State v. Boyd, supra,* the Supreme Court determined that "criminal episode" is synonymous with "same act or transaction" in ORS 132.560(2), relating to the permissive joinder of charges. The court also applied the definition of "same act or transaction" that it had initially formulated in *State v. Fitzgerald,* 267 Or 266, 273, 516 P2d 1280 (1973):

"[T]wo charges arise out of the same act or transaction if they are so closely linked in time, place and circumstance that a complete account of one charge cannot be related without relating details of the other charge."

Defendants offer *State v. Mancuso,* 25 Or App 785, 551 P2d 110, *rev den* 276 Or 133 (1976), as authority supporting the trial court's determination that all of the thefts

involved in the present case constitute a single "criminal episode." However, that case is not apposite. Our ruling in *State v. Hathaway,* 82 Or App 509, 728 P2d 908 (1986), *rev den* 302 Or 594 (1987), provides more relevant authority. The defendant there made two cocaine deliveries, separated by a four-hour interval, to a police informant pursuant to their agreement that the defendant would sell a total of one gram of cocaine. We noted the Supreme Court's language in *State v. Kessler,* 297 Or 460, 465, 686 P2d 345 (1984):

> "[T]he test of a single criminal objective is no panacea. People have goals for the long, medium, or short term, and the objective of the immediate act often is pursued as a step toward a more distant goal."

We concluded that the defendant had evinced two discrete criminal objectives to sell cocaine in making each delivery, even though the defendant's "distant goal" was to "fill a customer's order."

██ ██ In the present case, the charges against each defendant are based on events which occurred on specific days over a nine-month period. A number of employes participated and the identity of the partipants often changed, depending on who was working on a particular day. Defendant Tuttle became involved sometime after the conspiracy began. At least one other employe withdrew from the scheme and then later reentered it. Defendants also had opportunities to withdraw and made a discrete decision to participate each time. As in *State v. Hathaway, supra,* the facts of each charge can be adequately explained without drawing on the particular facts of another. Defendants may have had the same criminal objective each time that they stole from their employer, but that objective was not a single one. A string of thefts repeated at particular times over a long duration cannot be converted into a single crime solely because the perpetrators' methods and objectives were similar.

Separate prosecution for each of the second group of charges also does not violate Article I, section 12, of the Oregon constitution or the Fifth and Fourteenth Amendments. In *State v. Ellison,* 301 Or 676, 725 P2d 363 (1986), the Supreme Court determined that the defendant could be tried in separate prosecutions for driving with a suspended license and falsely identifying himself, because the two crimes had

not occurred simultaneously and were motivated by two independent criminal objectives.[2] Under similar analysis, defendants constitutional rights were not violated. The facts underlying the charges against each defendant occurred on different days and sometimes involved different participants. Also, as already noted, even though each of the thefts was inspired by the same motive *(i.e.,* obtaining money), that does not constitute a single objective for double jeopardy analysis.

Reversed and remanded.

---

[2] The federal test for deciding whether multiple prosecutions are barred is whether each charge requires proof of an additional fact that the other does not require. *Brown v. Ohio,* 432 US 161, 166, 97 S Ct 2221, 53 L Ed 2d 187 (1977); *Blockburger v. United States,* 284 US 299, 304, 52 S Ct 180, 76 L Ed 306 (1932).