Argued and submitted March 11, affirmed September 22, petition for review denied January 18, 2000 (329 Or 589)

## JIMMIE L. CUSTER,
### *Appellant,*

*v.*

## G. H. BALDWIN,
### Superintendent,
### Eastern Oregon Correctional Institution,
### *Respondent.*

### (CV94-0821; CA A95346)

986 P2d 1203

J. R. Perkins, III, argued the cause and filed the brief for appellant.

Jonathan H. Fussner, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before De Muniz, Presiding Judge, and Haselton and Wollheim, Judges.

HASELTON, J.

## HASELTON, J.

Petitioner appeals from a judgment dismissing his action for post-conviction relief, which arose from his conviction for sodomy in the first degree. ORS 163.405. Specifically, petitioner contends that his criminal defense counsel breached his duty to exercise skill and professional judgment by failing to assert that, because of the dismissal of a previous sodomy prosecution against petitioner, the prosecution resulting in petitioner's conviction was barred by former jeopardy. We conclude that former jeopardy did not bar the underlying prosecution because that prosecution did not arise out of the "same criminal episode" as the earlier prosecution for a similar offense. Accordingly, we affirm.

On appeal, the facts are undisputed: Two indictments, both alleging one count of sodomy in the first degree, were brought against petitioner for acts involving "J," petitioner's stepson. The first indictment, No. 87C-21562, dated September 17, 1987, alleged that:

"[O]n or about June 20, 1987, in Marion County, Oregon, [petitioner] did then and there unlawfully, feloniously, and knowingly engage in deviate sexual intercourse with [J], [his] spouse's son, a person under the age of sixteen years."

On February 2, 1988, that action proceeded to trial. The jury was empaneled and the following day, after hearing testimony from five witnesses, including the victim, the court dismissed the case "because there was insufficient evidence to proceed with the trial."[1]

The second indictment, No. 90C-21246, was filed October 5, 1990, 33 months after the acquittal under the first indictment. The second indictment alleged that:

"[O]n or between November 1, 1986, and June 19, 1987, in Marion County, Oregon, [petitioner] did then and there unlawfully, feloniously, and knowingly engage in deviate

---

[1] The order did not use the term "judgment of acquittal," but rather, "order of dismissal." However, the state concedes, and we agree, that it "appears that the court granted defendant's motion for a judgment of acquittal." *See* ORS 131.505(6) (defining "acquittal" under the former jeopardy statutes as including "a determination that there is insufficient evidence to warrant a conviction").

sexual intercourse with [J], a person under the age of sixteen, [his] spouse's son."

Petitioner's criminal defense counsel filed a pretrial motion to dismiss, asserting former jeopardy as one of two grounds for dismissal.[2] During the hearing on the motion, counsel withdrew the former jeopardy issue because he "did not believe that [he] had a chance of winning the * * * issue since the new indictment alleged a separate date." The court denied the motion on the remaining issue and the case proceeded to trial.

Petitioner was convicted of sodomy in the first degree and sentenced to 20 years imprisonment. He took a direct appeal of his conviction on issues other than former jeopardy, and we affirmed. *State v. Custer,* 124 Or App 438, 865 P2d 1339 (1993). Petitioner then filed this post-conviction action, in which he alleged, *inter alia,* that defense counsel failed to:

"[p]roperly preserve issues regarding the [acquittal of defendant under the first indictment] for lack of evidence five years earlier regarding the same charge and evidence constituting double jeopardy."[3]

The post-conviction court determined that petitioner had failed to sustain his burden of proof on any of his allegations and that petitioner had not been denied effective assistance of trial counsel:

"2. Petitioner's prosecution in the underlying Marion County Case No. 90C-21246 did not constitute double jeopardy for reason of a prior Marion County Case No. 87C-21562. The two prosecutions were not part of the same criminal episode.

"3. Counsel fully prepared and investigated petitioner's case. As discussed above, petitioner's double jeopardy rights were not violated. Counsel reasonably concluded that a motion to dismiss based on former jeopardy lacked merit."

---

[2] The other ground, the statute of limitations, is not relevant to this post-conviction appeal.

[3] Although petitioner refers to "double jeopardy," we use the term "former jeopardy" throughout this opinion. ORS chapters 135 and 131 use the phrase "former jeopardy" in lieu of "double jeopardy."

Based on those findings, the court concluded that petitioner was not entitled to post-conviction relief and entered judgment dismissing the petition. This appeal followed.

■■ On appeal, petitioner reiterates his claim that his trial counsel was constitutionally inadequate in that he failed to raise former jeopardy as a bar to petitioner's prosecution. To prevail under Article I, section 11, of the Oregon Constitution, petitioner must show by a preponderance of the evidence that: (1) counsel failed to exercise reasonable professional skill and judgment; and (2) petitioner suffered prejudice as a result—that is, "that counsel's advice, acts, or omissions had 'a tendency to affect the result of the prosecution.'" *Ashley v. Hoyt,* 139 Or App 385, 392, 912 P2d 393 (1996) (quoting *Stevens v. State of Oregon,* 322 Or 101, 110, 902 P2d 1137 (1995)). To prevail under the Sixth Amendment to the United States Constitution, petitioner must prove that counsel's assistance was unreasonable and that "'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Chew v. State of Oregon,* 121 Or App 474, 477, 855 P2d 1120, *rev den* 318 Or 24 (1993) (quoting *Strickland v. Washington,* 466 US 668, 104 S Ct 2052, 80 L Ed 2d 674 (1984)). Thus, petitioner's entitlement to post-conviction relief depends on the merits of the former jeopardy issue—*i.e.,* unless the second prosecution was, in fact, barred by former jeopardy, petitioner could not have been prejudiced by his defense counsel's failure to press that issue.

■ The essence of petitioner's argument is that, because the state "knew all about the entire course of conduct when it sought the first indictment" and chose only to proceed with "one count and one charge," it could not again prosecute petitioner:

> "While the particular act was different, the charges [in both prosecutions] were all about a course of conduct where the defendant sexually abused his step-son. While the course of conduct lasted over an extended period of time (months), and probably involved many discreet [*sic*] illegal acts, it [is] abhorrent to the constitutional principle of former jeopardy [to] let the state criminally prosecut[e] each act, individually, until they get a conviction.

"＊ ＊ ＊ ＊ ＊

"[A] series of crimes of like kind perpetrated against the same victim committed over a period of time is a 'course of conduct' constituting a criminal episode for purposes of determining constitutional 'former jeopardy.'"

■■　In making that argument, petitioner relies on ORS 131.515, which provides, in part:

"(1)　No person shall be prosecuted twice for the same offense.

"(2)　No person shall be separately prosecuted for two or more offenses based upon the same criminal episode, if the several offenses are reasonably known to the appropriate prosecutor at the time of commencement of the first prosecution and establish proper venue in a single court."

As we recently articulated in *State v. Lyons,* 161 Or App 355, 360, 985 P2d 204 (1999), that statute affords criminal defendants two former jeopardy protections:

"Subsection (1) of that statute is consistent with the constitutional prohibition against former jeopardy contained in Article I, section 12, of the Oregon Constitution ＊ ＊ ＊ and bars successive prosecutions for the same offense. Subsection (2) ＊ ＊ ＊ provides *greater* protection for criminal defendants because it bars consecutive prosecutions not only for the same offense but also for all known charges arising out of the same criminal episode." (Citations omitted; emphasis in original.) *See also State v. Farley,* 301 Or 668, 674, 725 P2d 359 (1986).

As we understand petitioner's argument, it is not that he was prosecuted twice for the same act—indeed, the indictments alleged different incidents on different dates. Rather, petitioner's argument is, necessarily, predicated on subsection (2)—*i.e.,* that the charges were known at the time of the original indictment and arose out of "the same criminal episode." We disagree.

■■　ORS 131.515(2) bars separate prosecutions for distinct offenses only if petitioner proves: (a) the separate prosecutions are for two or more offenses based on the same criminal episode; (b) the offenses are reasonably known to the appropriate prosecutor at the time of the commencement of

the first prosecution; and (c) the proper venue is shown in a single court. *State v. Delker,* 123 Or App 129, 132, 858 P2d 1345, *rev den* 318 Or 326 (1993). The trial court did not address the latter two elements because it concluded that the prosecution here was not "based on the same criminal episode."

ORS 131.505(4) defines "same criminal episode" as

"continuous and uninterrupted conduct that establishes at least one offense and is so joined in time, place and circumstances that such conduct is directed to the accomplishment of a single criminal objective."

In *Lyons,* we explained the proper analysis for determining when multiple offenses comprise the same criminal episode:

"Multiple acts comprise the same criminal episode only if those acts are directed toward the accomplishment of a *single criminal objective.* * * * [W]hether certain acts are connected by a single goal may be shown by their 'continuous and uninterrupted' nature and by their bond 'in time, place and circumstance.' In [*State v.*] *Boyd,* [271 Or 558, 533 P2d 795 (1975)], the court established an initial guideline—the unitary transaction test—to determine whether conduct is connected in the manner described by ORS 131.504(4): where 'the facts of *each* charge can be explained adequately only by drawing upon the facts of the other charge.'

"That test is not the only guideline, however. In some circumstances, the application of the unitary transaction test may fail to yield a clear answer as to whether successive prosecutions are barred by ORS 131.515(2). Where there is some question as to whether the various charges should have been joined in an earlier prosecution, the jeopardy concern should be resolved by considering the defendant's right, as embodied in ORS 131.515(2), 'to be free from being required to answer more than once for the same act or transaction[.]' In other words, in using the phrase 'based upon the same criminal episode,' the legislature established a policy of finality for the defendant's benefit that prohibits the reprosecution of factual issues already resolved by an earlier prosecution." 161 Or App at 361-62 (citations omitted; emphasis in original).

Here, the unitary transaction test does, in fact, yield a "clear answer": The later prosecution was not barred by ORS 131.515(2).

Petitioner's conduct was not directed to the accomplishment of a "single criminal objective." ORS 131.505(4). Petitioner does not point to anything in the record indicating that the facts relating to the incident in the first prosecution are "so closely linked in time, place and circumstance that a complete account of one charge cannot be related without relating details of the other charge." *Id.* The acts were not "continuous and uninterrupted." *Id.* Rather, the first indictment charged conduct occurring on June 20, 1987, while the second indictment charged similar conduct that occurred during a span of several months preceding, but not including, the date and conduct alleged in the first indictment. *See State v. Nguyen,* 95 Or App 653, 657, 771 P2d 279, *rev den* 308 Or 142 (1989) (defendant's two acts of DUII committed two hours apart and just a few blocks from each other did not arise from "continuous and uninterrupted" conduct); *State v. Black / Tuttle,* 89 Or App 359, 364, 749 P2d 1185, *rev den* 305 Or 577 (1988) ("A string of thefts repeated at particular times over a long duration cannot be converted into a single crime solely because the perpetrators' methods and objectives were similar.").

Petitioner seeks, nevertheless, to transmute a number of discrete acts of sodomy against the same victim, occurring over a course of months, into a single criminal episode merely by contending that his objective was to engage in a continuous course of abuse. In *State v. Hathaway,* 82 Or App 509, 728 P2d 908 (1986), *rev den* 302 Or 594 (1987), we rejected a similar argument. Specifically, we distinguished between a *single* objective and the *same* objective. There, the defendant was charged with delivery of a controlled substance to the same undercover officer, at the same location, with four hours between the two deliveries. The defendant alleged that prosecution for the second delivery was barred by former jeopardy because the officer had originally requested a single quantity which she filled in two deliveries, receiving payment for each individually. In concluding that the two deliveries were not a "single criminal episode" within the meaning of ORS 131.515(2), we reasoned:

"Defendant's 'distant goal' was to 'fill a customer's order.' Nonetheless, she committed two discrete criminal offenses. Two deliveries of drugs separated by a four hour period are not a 'single criminal episode' within the meaning of ORS 131.515(2) just because the agent who received the drugs had initially ordered a single quantity. *Although defendant may have had the same objective in making each delivery (to receive payment for delivering illegal drugs), her objective was not a single one.* It would not make sense to hold that a defendant can convert a number of deliveries over a period of time into a single criminal episode by announcing in advance an intention to deliver a large quantity." *Hathaway,* 82 Or App at 515 (footnote omitted; emphasis added).

*See also Nguyen,* 95 Or App at 656 n 4 ("Defendant twice had the objective of driving while intoxicated. That is different from having a single objective."); *Black/Tuttle,* 89 Or App at 364 (thefts inspired by the same motive—*i.e.,* obtaining money—did not constitute a single objective for former jeopardy analysis).[4]

---

[4] Petitioner's reliance on *State v. Washington,* 28 Or App 765, 561 P2d 644 (1977), and *State v. Mancuso,* 25 Or App 785, 551 P2d 110, *rev den* 276 Or 133 (1976) is unavailing. As we observed in *Nguyen,* the dispositive feature of those cases was the state's failure to move for joinder of charges under separate, concurrently pending indictments. 95 Or App at 657 n 5. Whatever the continuing vitality of that principle, *see, e.g., Washington,* 28 Or App at 769 (Richardson, J., concurring), the charges in this case were never concurrently pending. As the state explains:

"The first indictment was handed up on September 17, 1987; petitioner was tried and acquitted on February 3, 1988; and the second indictment was not handed up until October 5, 1990—over two and a half years after the first trial. Petitioner does not dispute that the reason for the delay was that the victim, who had been unable to bring himself to discuss the crime at the first trial, had grown older and more mature and had become able to testify in open court, thus permitting the second prosecution to occur. The state could not have moved to consolidate these two indictments, as this court would have had it do under the *Washington/Mancuso* approach, because they did not both exist at the same time."

Thus, *Washington* and *Mancuso* are inapposite. *See, e.g., Nguyen,* 95 Or App at 657 n 5 (citing *Hathaway,* and noting that when the state fails to move for joinder in a close case, *Mancuso* and *Washington* do not "dictate" that resolution of a former jeopardy claim in the defendant's favor "automatically follows"); *Black/Tuttle,* 89 Or App at 363-64 (concluding that *Mancuso* was not apposite in determining whether thefts constituted a single "criminal episode" and relying on *Hathaway* as "more relevant authority").

Because the charges against petitioner did not arise out of the same criminal episode, former jeopardy did not bar the second prosecution. Consequently, trial counsel's failure to litigate the former jeopardy issue did not violate petitioner's constitutional right to adequate assistance of counsel.

Affirmed.